UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

SHERRI L. SPILLERS,

        Plaintiff,

v.

Commissioner of Social Security,

        Defendant.

6:15-cv-490-TC

FINDINGS & RECOMMENDATION

COFFIN, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits and supplemental security income benefits.

Plaintiff asserts disability beginning September 30, 2010, due to: diabetes; obesity; degenerative disc disease; carpal tunnel syndrome; reactive airway disease with linear densities, opacities, scarring, and atelectasis of the lungs with peribronchial wall thickening. After a hearing, in which an administrative law judge (ALJ) determined that plaintiff is not disabled, the Appeals

Page 1 - FINDINGS & RECOMMENDATION

Council remanded to update the record regarding plaintiff's impairments and residual functional capacity (RFC) among other things. Tr. 42, 192-94. After the second hearing, a new ALJ determined that plaintiff became disabled on September 29, 2013 (due to her turning 50 and application of medical- vocational rule 201.14) and not before that date.[1] Plaintiff asserts disability beginning three years prior to the ALJ's determination and asserts that the ALJ erred in: (1) rejecting the opinions of treating nurse practitioners; (2) rejecting plaintiff's testimony; (3) rejecting lay witness statements; and in (4) relying on vocational expert opinion based on an incomplete hypothetical.

A.  Nurse Practitioner Opinions

Nurse Practitioners do not fall under the category of "acceptable medical source" to establish a medical impairment. See 20 C.F.R. § 404.1513(a)(1-5). However, the Social Security Administration may also use evidence from other medical sources, including nurse practitioners, to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d)(1). Opinions from nurse practitioners are important and should be evaluated on key issues such as the severity and functional effects of a claimant's impairments, SSR 06-03p, but they are not entitled to the same deference as opinions from accepted medical sources. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Accordingly, the ALJ may discount an opinion from a nurse practitioner by giving reasons germane to the opinion. Id.

On February 21, 2011, family nurse practitioner (FNP) Shannon Thom provided an

---

[1] The ALJ determined that plaintiff could perform the occupations of order clerk, charge account clerk, and addresser prior to plaintiff's fiftieth birthday. Tr. 51-52

Page 2 - FINDINGS & RECOMMENDATION

assessment of plaintiff's abilities based on her monthly visits going back to July of 2010. Tr. 642-45. FNP Thom opined that plaintiff's back pain, shortness of breath, and fatigue are worsened by exertion and that she cannot ambulate long distances (less than a block). Tr. 642-3. FNP Thom further opined that plaintiff sit or could stand for 15 minutes at time and for less than two hours total in an eight-hour work day, with a need to switch from one or the other at will. Tr. 643. FNP Thom also indicates that plaintiff will routinely need to take unscheduled breaks of unknown duration during the work day. Tr. 643-44. Thom also opines that plaintiff should rarely lift less than ten pounds and never lift anything more, and rarely twist/stoop/crouch/climb. Tr. 644. FNP Thom asserts that plaintiff will also be "off task" 25% or more of the time and would be absent from work more than four times per month. Tr. 644-45. Finally, FNP Thom opines that plaintiff will need to limit her contact with germs, pollutants and also need to wear a portable oxygen mask when working. Tr. 645.

On August 22, 2012, FNP Kaylene Cribbs, who began treating plaintiff in December of 2011, opined that plaintiff's pulmonary fibrosis makes it very difficult for her to work full-time. Tr. 650.

The ALJ noted that Thom did not address plaintiff's continued cigarette smoking or its effects on her functioning. Tr. 50. The ALJ gave little weight to the opinion finding it inconsistent with objective findings and treatment notes. The ALJ further noted that the opinion:

> is not consistent with the objective findings in the claimant's treatment notes. In particular, in April 2013, treating physician, Mildred Rowley, MD, indicated that the claimant's pulmonary fibrosis was "stable" (Ex. 16F/12). Dr. Rowley also noted that the claimant's pulmonary effort was "normal" and that her breath sounds were "normal" without any evidence of wheezing (Ex. 16F/12). In addition, Dr. Rowley found that the claimant demonstrated normal range of motion without any edema or tenderness. Similarly, during a May 2013 appointment, Dr. Rowley observed that the claimant demonstrated "normal" pulmonary effort without any respiratory distress (Ex. 16F/8). Due to these notable inconsistencies between Ms. Thom's opinion for

the exclusive purposes of the claimant's application for disability benefits, and the
treatment notes, the undersigned gives her opinion little weight and consideration.

Tr. 50.

Plaintiff asserts that Dr. Rowley also allowed plaintiff remain on supplemental oxygen 24 hours per day. However, plaintiff's pulmonologist indicated plaintiff did not need to be on supplemental oxygen any longer. Tr. 798. Plaintiff also takes issue with the remark regarding smoking because plaintiff had significantly reduced her smoking to a five cigarettes per day by June of 2013. Tr. 793. However, it is unclear how many cigarettes plaintiff was smoking at the time Thom rendered her opinion in 2011. At the March 3, 2012 hearing, plaintiff indicated she had cut down to half a pack per day by that point, stating she had "cut down a whole lot ." Tr. 101.[2] The failure of Thom to address the issue is certainly germane to her opinion.

Plaintiff also argues that Dr. Rowley's notes are based on plaintiff's condition while sitting and "chances are, if plaintiff got up and tried to move around and be more active during one f Dr. Rowley's examination, Dr. Rowley would have noted similar limitations to those of FNP Thom." Reply (#15) at p. 3. However, this is speculation on plaintiff's part and the ALJ's comparison of the doctor's treating notes and Thom's opinion is a germane reason for discounting Thom's opinion.[3] Plaintiff also takes issue with the apparent assumption that "stable " has anything to do with the degree of severity of impairments. Nonetheless, the comparison is still germane to the opinion. The ALJ did not err in discounting FNP Thom's opinion.

The ALJ similarly did not err in giving little wight to FNP Cribb's opinion relying on the

---

[2]At the November 25, 2013 hearing, plaintiff asserted that she was down to two or three cigarettes a day from a pack and a half a day. Tr. 82.

[3]In addition, the ALJ did limit plaintiff to sedentary work.

Page 4 - FINDINGS & RECOMMENDATION

same medical record.

B.  Plaintiff's Testimony

Plaintiff testified that just walking 20 feet will leave her short of breath. Tr. 100. Plaintiff also asserted limitations in sitting and standing to 15-20 minutes at a time and an ability to lift only five to seven pounds. Tr. 109. Plaintiff asserts she is unable to work on a continuing basis.

The ALJ found plaintiff to lack credibility:

> The claimant's allegation that she unable to walk more than 20 feet at one time is not consistent with the objective observation or treatment notes in the record. There is also no prescription for a walker, nor any evidence in the record regarding the need or use of an assistive device.[4] In particular, in April 2013, treating physician, Dr. Rowley observed that the claimant had normal reflexes, and that her coordination was "normal" (Ex. 16F/12). Upon examination of the claimant's musculoskeletal system, Dr. Rowley also found that the claimant demonstrated "normal range of motion" without any evidence of edema or tenderness. The claimant also presented with normal pulmonary effort with normal breath sounds (Ex. 16F/12). In addition, there is no indication by Dr. Rowley that the claimant had any difficulty walking.
> Similarly, there is no objective evidence in the medical record that is consistent with the claimant's allegation of an inability to sit for more than 15 to 30 minutes, stand more than 10 to 15 minutes, or lift more than 7 to 8 pounds. The discrepancies between the claimant's allegations and unremarkable progress notes in the record severely diminish her credibility.
> In addition, the claimant's allegation that she had disabling pulmonary impairments is not consistent with her candid statements and presentation. Also during her April 2013 appointment with Dr. Rowley, the claimant reported that her pulmonologist told her that she did not need to be on supplemental oxygen (Ex 16F/10). In addition, the fact the claimant acknowledged at the hearing that she still smoked cigarettes calls into question the veracity of her allegations.
> The claimant's activities of daily living are also not fully consistent with allegations of disabling impairment that would preclude work consistent with the residual functional capacity specified above.  For example, the claimant and her sister reported that was still able to drive, shop, sew, crotchet, prepare meals, and

---

[4]FNP Walker did accommodate plaintiff's request for a walker with a seat and prescribed one. Tr. 743.

Page 5 - FINDINGS & RECOMMENDATION

> watch television. Although the claimant testified that she rarely drove due to vision problems, there is no such complaints in the routine progress notes. In addition, the claimant testified that she was still able to read, and use a computer to access her facebook account, which is again, not fully consistent with allegations of vision problems. These discrepancies further erode the credibility of the claimant's allegations.

Tr. 47-48. The ALJ also noted that there is no opinion from an acceptable medical source that claimant is as limited as she alleges. Tr. 48.

"[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) . If the ALJ finds plaintiff's symptom testimony not to be credible, he must specifically make findings that support such conclusion, and those findings must be sufficiently specific to show that the ALJ did not arbitrarily discredit plaintiff's testimony. Id. at 345. If there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of symptoms. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Unlike the ALJ's treatment of the nurse practitioner opinions, needing only germane reasons to discount them, simply noting unsupportive treatment notes is insufficient to provide the necessary clear and convincing reasons for rejecting plaintiff's symptom testimony. Moreover, the activities cited by the ALJ do not demonstrate an ability to walk more than 20 feet or sit and stand for longer than 10 to 15 minutes. See, e.g., Tr. 378, 74 (used to crotchet for 10 to 30 minutes per day, but can't even do that due to carpal tunnel); Tr. 75 (she goes to the store to shop if they have an electronic wheelchair). Also, plaintiff's inability to work is primarily based on her pulmonary issue and not any

purported vision issues.[5]

Although failure to follow treatment recommendations, such as quitting smoking, can provide a clear and convincing reason to reject testimony, plaintiff has nearly quit and it is unclear from the record what impact smoking may have had on her ability to work during the time period in question.[6] However, this demonstrates a problem with plaintiff's testimony in that it is not clear, as it was with FNP Thom's opinion, that accepting plaintiff's allegations demonstrates disability. Therefore, a remand is necessary to address the error in the discrediting of plaintiff's testimony.

The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)). Remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Evidence should be credited

> that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

Accordingly, a remand for further proceedings will not be allowed solely so that the ALJ can

---

[5] It should also be noted that the ALJ's findings regarding plaintiff lifting abilities nearly matches plaintiff's testimony. Compare Tr. 46 (ALJ finds plaintiff limited to lifting no more than 5 to 10 pounds).

[6] Moreover, the role of nicotine addiction may play a role in any purported failure to follow treatment advice. See Strutz v. Colvin, 2005 WL 4727459 at *7 (D.Or. Aug. 10, 2015).

Page 7 - FINDINGS & RECOMMENDATION

make specific findings regarding testimony. Rather, where an ALJ provides legally insufficient reasons for rejecting plaintiff's testimony, that testimony is treated as true and the case remanded for an award of benefits if the testimony establishes disability. Harmen v. Apfel, 211 F3d. 1172, 1179 (9th Cir. 2000).

It is not clear from plaintiff's testimony (or that of her sister which substantially mirrors plaintiff's testimony) that she was disabled prior to the date the ALJ determined her to be disabled. Accordingly, a remand is necessary to determine whether plaintiff's allegations establish disability prior to the date determined by the ALJ. Upon remand, the ALJ can further address lay witnesses testimony and seek an opinion from a vocational expert as to the impact of any limitations noted by these sources, that the ALJ finds supported, on ability to work during the time period in question.

## CONCLUSION

For the reasons stated above and pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner should be reversed and the case remanded for further proceedings.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to

appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 16 day of February 2016.

THOMAS M. COFFIN
United States Magistrate Judge